J-S43003-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BILLY DIAMOND WILLIAMS | |
| Appellant | No. 838 WDA 2017 |

Appeal from the Judgment of Sentence imposed December 6, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0001885-2016

BEFORE: STABILE, DUBOW, and NICHOLS, JJ.

MEMORANDUM BY STABILE, J.: FILED OCTOBER 24, 2018

Appellant, Billy D. Williams, appeals from the judgment of sentence imposed on December 6, 2016 in the Allegheny County Court of Common Pleas following his convictions of aggravated assault, endangering the welfare of a child (EWOC), and recklessly endangering another person (REAP).[1] The jury found him not guilty of a second count of aggravated assault.[2] Appellant

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(8), 4304(a)(1), and 2705, respectively. A person is guilty of aggravated assault under § 2702(a)(8) if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to a child less than six years of age, by a person 18 years of age or older[.]" (Emphasis added.)

[2] 18 Pa.C.S.A. § 2702(a)(9). A person is guilty of aggravated assault under § 2702(a)(9) if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a child less than 13 years of age, by a person 18 years of age or older." (Emphasis added.)

asserts trial court error for excluding the testimony of a defense expert witness, for denying a continuance after excluding the expert testimony, for admitting evidence of a prior conviction, and for imposing an excessive sentence. Upon review, we affirm in part, vacate in part, and remand.

As the trial court explained:

Briefly, the evidence presented at trial established that [D.W.], born on October 13, 2015, was the daughter of India Murphy and [Appellant]. She lived with her mother and her 10-year old sister in an apartment on Memory Lane in the Hill District section of the City of Pittsburgh. [Appellant] did not live there, but would come to the apartment on Friday evening and care for [D.W.] over the weekend while her mother rested. He would leave on Monday morning to go to work.

On Tuesday, November 10, 2015, when she was four (4) weeks old, [D.W.] was seen by her pediatrician, Dr. Cindy Cook, for a linear bruise on her back. Dr. Cook was unable to determine a cause for the bruise.[3]

On Monday, November 16, 2015, [D.W.] was seen by Dr. Cook for a subconjunctival hemorrhage in her left eye. She was referred to the Child Advocacy Center of Children's Hospital of Pittsburgh for a non-accidental trauma assessment, but the physicians there were unable to determine the cause of the hemorrhage.

On Sunday evening, November 22, 2015, [D.W.] was taken to the Emergency Room at Children's Hospital for subconjunctival hemorrhages in both eyes, petechia (burst blood vessels) around her eyes and a facial rash. She was admitted to the hospital but was later discharged when the doctors were unable to find a medical explanation for her injuries.

_____

[3] As a point of clarification, the November 10 visit was a regularly-scheduled "well baby" check. In the course of the examination, Dr. Cook discovered and photographed the linear bruise but was unable to determine a cause.

On Sunday, December 27, 2015, [D.W.] was again taken to the Emergency Room at Children's Hospital. Upon examination, she was found to have subconjunctival hemorrhages and petechia in both eyes, bruising to her chest and abdomen and a healing fracture to her left 6th rib. She was examined by Dr. Jennifer Wolford, the attending physician at the Child Advocacy Center, who determined that [D.W.'s] rib fracture was caused by a squeezing motion and the subconjunctival hemorrhages were caused when blood vessels ruptured while she was struggling to breathe. Dr. Wolford concluded that [D.W.] was the victim of child abuse and contacted the police and Children, Youth and Families.

At trial, India Murphy testified that she had caused [D.W.'s] broken rib in an accident one month prior, when she had fallen asleep with the baby on her chest and the baby fell. Murphy testified that she woke suddenly and caught the baby between her knees. Dr. Wolford testified that this was medically impossible, insofar as the type of rib fracture [D.W.] had can only be caused by squeezing and the incident described by Murphy would have broken more than one rib and in a different location from [D.W.'s] injury. Murphy also testified that the eye hemorrhages were due [to D.W.'s] milk allergy, although she conceded that once [Appellant] was in custody, [D.W.] continued to have the milk allergy issues but suffered no further eye hemorrhages.

When he was interviewed by the police, [Appellant] admitted to squeezing [D.W.] and demonstrated how he did so. His demonstration matched Dr. Wolford's description of how the injury occurred.

Trial Court Opinion, 12/4/17, at 2-3.

As noted above, a jury convicted Appellant of aggravated assault, EWOC, and REAP. The trial court sentenced him to consecutive terms of five to ten years in prison for aggravated assault and three and a half to seven years for EWOC. The court did not impose any additional sentence for REAP. Post-sentence motions were filed and denied. This timely appeal followed. Appellant asks us to consider four issues in this appeal as follows:

I.      Whether the trial court erred in excluding [Appellant's] expert witness when the expert was crucial to [Appellant's] defense and was highly qualified in the field of forensic epidemiology to render an opinion on the cause of the victim's injuries?

II.     Whether the trial court erred in denying [Appellant's] motion for a continuance after excluding his expert on the eve of trial, depriving [Appellant] of the opportunity to present a full and fair defense?

III.    Whether the trial court erred in admitting [Appellant's] prior conviction into evidence, when the risk of unfair prejudice highly outweighed the probative value?

IV.    Whether the trial court abused its discretion in sentencing [Appellant] to consecutive statutory maximum sentences based on incorrect facts and without considering [Appellant's] character and rehabilitative needs?

Appellant's Brief at 6-7.[4]

Appellant's first issue involves a challenge to an evidentiary ruling, i.e.,

the trial court's exclusion of Appellant's expert testimony. As our Supreme

Court reiterated in Commonwealth v. Melvin, 103 A.3d 1 (Pa. 2014):

> Our standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. Commonwealth v. Hanford, 937 A.2d 1094, 1098 (Pa. Super. 2007), appeal denied, 598 Pa. 763, 956 A.2d 432 (2008). An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, the exercise of judgment that is manifestly unreasonable, or the

_____

[4] The Commonwealth asks us to find Appellant's issues waived for failure to preserve each issue with requisite specificity in Appellant's Rule 1925(b) statement. We decline to find waiver. It is clear from the trial court's opinion that the court was able to identify and address each issue without having to speculate as to the nature of Appellant's claims.

result of bias, prejudice, ill will or partiality, as shown by the evidence of record. *Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013), appeal denied, [624 Pa. 688], 87 A.3d 319 (2014).

*Id.* at 35. Further, "[g]enerally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." *Commonwealth v. Watson*, 945 A.2d 174, 176 (Pa. Super. 2008) (citations omitted).

On May 3, 2016, Appellant filed a motion seeking funds to obtain "Medical Expert Assistance at the Commonwealth's Expense." Motion, 5/3/16, at 1. Neither the motion nor the proposed order identified an expert or any particular area of medical expertise. The Commonwealth filed a response, objecting on the grounds that Appellant had privately-retained counsel and did not allege any legally sufficient basis for the Commonwealth to pay for his defense. Response to Motion, 5/3/16, at 1. On July 28, 2016, the trial court entered an order granting Appellant's motion, allotting $2,500 for Forensic Epidemiologist Steven A. Koehler, MPH, Ph.D., to investigate, prepare a report, and testify, if appropriate. Order, 7/28/16, at 1.

In its Rule 1925(a) opinion, the trial court explained:

On September 7, 2016, 12 days before the start of trial, the Commonwealth received the proposed expert report of epidemiologist Steven Koehler and forensic nurse consultant Karen Applegate. The report purported to adopt India Murphy's recitation of events as [an] "alternative explanation" for [D.W.'s] rib fracture after conducting a "doll re-enactment," though the "doll re-enactment" was only perfunctorily described as follows:

> FMI[5] provided a doll with an approximate location of the skeletal structure superimposed of the infant (Figure 1). Using this doll we asked India Murphy to demonstrate to us how she caught the infant between her thighs that caused the rib fracture.
>
> (p. 4).
>
> The bulk of the report, however, was a wide-ranging and sometimes vitriolic personal criticism of Dr. Jennifer Wolford, at times calling her conduct unethical, repeatedly insisting she made decisions based on "dogma" and "instituted bias," asserting that she was prejudiced against India Murphy and abusive to her[.]

Trial Court Opinion, 12/4/17, at 4.

The Commonwealth filed a motion in limine, seeking to bar the testimony of Dr. Koehler and asserting, inter alia, that Dr. Koehler was not a medical doctor or an expert in child abuse; that the attacks against Dr. Wolford were not a proper subject of expert testimony; that the methodology employed by Dr. Koehler did not satisfy Pennsylvania's test for scientific evidence enunciated in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923) or Pennsylvania Rules of Evidence 702 and 703; and that a video reenactment of India Murphy's actions in "catching" the child between her legs was inadmissible. Motion in Limine, 9/17/16. The Commonwealth asked the trial court to exclude Dr. Koehler's testimony or, alternatively, conduct a Frye hearing. Id. Appellant did not file a response to the Commonwealth's motion.

_____

[5] The report was on letterhead from "Forensic Medical Investigations, LLC," bearing the names of Dr. Koehler and Nurse Applegate.

At a hearing on the motion prior to trial, the Commonwealth reiterated the points raised in its motion. Appellant's counsel countered that Dr. Koehler was not being "presented for medical treatment. We're not calling him for that. This is a forensic case. This is what caused the injuries, and this man has all types of credentials concerning that." Notes of Testimony, Trial, at 8. Appellant's counsel further asserted that the fractured rib was the only injury at issue and that the Commonwealth's case was not one of child abuse. Id. at 11-12 and 14-16. The Commonwealth disputed that contention, arguing that all of the child's injuries were at issue. Id.

The trial court agreed with the Commonwealth and granted its request to exclude the testimony of Dr. Koehler.[6] Id. In its Rule 1925(a) opinion, the court explained:

> As this [c]ourt noted at argument, . . . the proposed report discussed only [D.W.'s] fractured rib and completely ignored her infraorbital hemorrhages and petechia. The medical records produced by the Commonwealth demonstrate a pattern of injuries involving squeezing/strangulation on the days of or immediately after [Appellant] was caring for her, initially subconjunctival hemorrhages and petechia, bruising on her chest and back and, ultimately, a fractured rib. The central question[] of the trial was, therefore, whether [D.W.'s] constellation of injuries and the pattern of their occurrence constituted abuse and whether [Appellant] was the individual who inflicted those injuries. The report proposed by [Appellant] did not address either of these issues and in fact did not ever mention the subconjunctival hemorrhages, the petechia or the bruising. Neither did the report

_____

[6] With respect to the alternative relief requested in the form of a Frye hearing, the Commonwealth voiced its understanding that Appellant "does not have anyone present to present evidence as to Frye." Notes of Testimony, Trial, at 4. Appellant did not offer any suggestion to the contrary.

mention [Appellant's] admission that he squeezed [D.W.] or his demonstration of how he did so. Instead, the report was almost exclusively a personal criticism of Dr. Wolford and the other physicians and staff at Children's Hospital. To the extent that the report did purport to posit an "alternative explanation" for [D.W.'s] rib fracture, it also failed entirely to consider (or even mention) her other injuries and any common causation or interrelation between them. The report was purposefully deceptive in this omission and allowing it to be presented to the jury would have been tantamount to a fraud on the court. Therefore, this [c]ourt was well within its discretion in excluding it.

Trial Court Opinion, 12/4/17, at 10-11 (reference to notes of testimony omitted). Based on our review of the record, we find no abuse of discretion on the part of the trial court. Therefore, Appellant is not entitled to relief on his first issue.

Appellant next argues that the trial court erred by denying its request for a continuance after granting the Commonwealth's motion to exclude Dr. Koehler's testimony. In Commonwealth v. Pettersen, 49 A.3d 903 (Pa. Super. 2012), appeal denied, 63 A.3d 776 (Pa. 2013), this Court recognized:

"It is well settled that the grant of a continuance rests within the sound discretion of the trial court and that the decision to deny the continuance will not be reversed unless a clear abuse of discretion is shown." Commonwealth v. Hughes, 264 Pa. Super. 118, 399 A.2d 694, 698 (1979). Moreover, an appellate court will not find an abuse of discretion if the denial of the continuance did not prejudice the appellant. See Commonwealth v. McKelvie, 471 Pa. 541, 370 A.2d 1155 (1977)[.]

Id. at 914 (additional citation omitted). "[A defendant] must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time. [This Court]

will not reverse a denial of a motion for continuance in the absence of prejudice." Commonwealth v. Ross, 57 A.3d 85, 91 (Pa. Super. 2012) (citation omitted), appeal denied, 72 A.3d 603 (Pa. 2013). In Ross, the defendant sought to have court-appointed counsel removed from his case for alleged ineffectiveness. The trial court denied the request, leading the defendant to secure privately-retained counsel who entered an appearance two weeks before the scheduled start of trial. We concluded that the trial court abused its discretion by denying new counsel's requests for continuance based on, inter alia, the need for additional time to secure expert opinions to refute anticipated Commonwealth expert witness testimony and the need to meet with scores of witnesses who had been interviewed by the State Police. Id. at 88-93.

Unlike the defendant in Ross, Appellant here has not demonstrated specifically the manner in which he was unable to prepare his defense or how he would prepare differently, given more time. As indicated above, Appellant requested funding for a "medical expert investigation" approximately five months prior to trial. He did not retain a medical expert, opting instead to retain a forensic epidemiologist, despite his awareness of the anticipated expert medical testimony to be presented by the Commonwealth. Nevertheless, he argued to the trial court that "[w]ithout some type of medical or some type of expert testimony to counter the Commonwealth's case, this is prejudice in our case[.]" Notes of Testimony, Trial, at 18.

As the trial court reasoned:

> [T]he record reflects that this court's denial of a continuance did not change the outcome of the case. Defense counsel had several months to secure expert review and produced only the report from Dr. Koehler. Given [D.W.'s] multiple injuries and the pattern of their occurrence it seems unlikely that any physician would not have classified the injuries as child abuse or that [Appellant] could otherwise have easily secured an expert to that effect. Thus, more time would have served no further purpose, nor would it have changed the verdict. It is further clear from the record that [Appellant's counsel] was well-prepared for trial, that he engaged in thoughtful and effective cross-examination and made cogent arguments to the jury. Under these circumstances, this court was well within its discretion in denying [Appellant's] request for a continuance immediately prior to jury selection. This claim must fail.

Trial Court Opinion, 12/4/17, at 13 (some capitalization omitted). We find no abuse of discretion in the trial court's denial of a continuance. Appellant's second issue fails.

Appellant next argues that the trial court erred by allowing introduction on evidence relating to a prior conviction. Once again, Appellant is presenting a challenge to an evidentiary ruling for which our standard of review is abuse of discretion. See Melvin, supra, 103 A.3d at 35.

Pennsylvania Rule of Evidence 404(b) governs the introduction of evidence of crimes, wrongs or other acts. Whereas evidence of a crime is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

accident." Pa.R.E. 404 (b)(1) and (2). However, "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Prior to trial, the Commonwealth filed its notice of intent to introduce Appellant's 2014 conviction for simple assault stemming from his guilty plea relating to injuries suffered by his deceased five-month old son. Although the cause of the child's death was determined to be pneumonia, injuries observed on a post-mortem skeletal survey included ribs fractures. The autopsy confirmed two healing rib fractures and one "fresher" one, believed to be fewer than five days old. By history, the child had presented with minor injuries on various other occasions, including a two-inch long laceration on his face, abrasions on his chin and nose, possible facial bruises, and a red mark in his eye. Notes of Testimony, Trial, at 148-54.

Our Supreme Court has "long recognized an exception to the general inadmissibility of other crimes evidence where there is a striking similarity— or logical connection—between the proffered prior bad acts and the underlying charged crime." Commonwealth v. Hicks, 156 A.3d 1114, 1125 (Pa. 2017). Here, the trial court explained:

> A review of the record demonstrates that this court's decision was well within its discretion. [Appellant's] plea to simple assault for causing injuries including rib fractures (caused by the mechanism of squeezing) and eye hemorrhages to his three (3) (sic) month old son is reflective of an inherent similarity and the absence of mistake or lack of accident contemplated by Rule 404(b).

Trial Court Opinion, 12/4/17, at 16 (some capitalization omitted).

- 11 -

In Hicks, our Supreme Court also recognized that "[w]here a logical connection between the other crimes and the underlying charged crime has been established . . . the court must also determine whether the probative value of the evidence outweighs any unfair prejudice." Hicks, 156 A.3d at 1128 (citing Pa.R.E. 404(b)(2)). "Obviously, the impact of introducing evidence of other crimes is significant and may be highly prejudicial. However, such evidence is also highly probative when the Commonwealth's case is otherwise based largely on circumstantial evidence." Id. (citations omitted). The trial court considered the prejudice and observed:

> Neither was the evidence unduly prejudicial. By its very nature, all evidence presented by the Commonwealth is prejudicial to a criminal defendant. However, evidence regarding his prior plea was not so overly prejudicial that it justified exclusion. Ultimately, the evidence was [] vastly more probative than prejudicial and so this court correctly allowed its admission.

Trial Court Opinion, 12/14/17, at 16-17 (some capitalization omitted). As in Hicks, "the probative value of the evidence to the Commonwealth's largely circumstantial case clearly outweighed any unfair prejudicial effect, which was properly limited by the trial court's cautionary instructions to the jury." Hicks, 156 A.3d at 1129.[7] We find no abuse of discretion in the trial court's evidentiary ruling. Appellant's third issue fails.

_____

[7] In the instant case, the trial court similarly delivered a cautionary, limiting instruction to the jury as follows:

In his fourth and final issue, Appellant argues that the trial court abused its discretion by imposing consecutive statutory maximum sentences, without considering Appellant's character and rehabilitative needs. As such, Appellant is challenging the discretionary aspects of his sentence.

In Commonwealth v. Levy, 83 A.3d 457 (Pa. Super. 2013), this Court reiterated:

> Appellant is not entitled as of right to a review of such a challenge. Our jurisdiction over a claim regarding the discretionary aspects of sentence must be established as follows:
>
>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

Id. at 467 (quoting Commonwealth v. Moury, 992 A.2d 162, 170 (Pa. Super. 2010).

_____

> You have heard evidence to prove that [Appellant] was guilty of simple assault. This evidence is before you for a limited purpose. That is for the purpose to show intent, motive, identity, absence of mistake or accidents. This evidence must not be considered by you in any other way other than for the purpose I just stated.
>
> You must not regard that evidence as showing [Appellant] is a person of bad character or criminal tendency from which you might be inclined to infer guilt.

Notes of Testimony, Trial, at 280.

A review of the record reveals that Appellant has satisfied the first three elements of the test. Therefore, we must determine whether he has presented a substantial question as required by the fourth prong of the test outlined in Levy. In Commonwealth v. Caldwell, 117 A.3d 763 (Pa. Super. 2015) (en banc), this Court held that a "challenge to the imposition of consecutive sentences as unduly excessive, together with a claim that the trial court failed to consider the defendant's rehabilitative needs upon fashioning its sentence, presents a substantial question." Id. at 770. See also Commonwealth v. Swope, 123 A.3d 333, 340 (Pa. 2015) (claim of excessiveness coupled with claim trial court failed to consider rehabilitative needs and mitigating factors presents a substantial question). As in Caldwell and Swope, Appellant has presented a substantial question in this case. In addition, the Commonwealth concedes Appellant has raised a substantial question in his assertion that the trial court made "erroneous factual findings" justifying Appellant's sentence. Commonwealth Brief at 59. Therefore, we shall consider Appellant's claims.

"In reviewing a challenge to the discretionary aspects of sentencing, we evaluate the court's decision under an abuse of discretion standard. Additionally, this Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S.[A]. § 9781(c) and (d)." Commonwealth v. Dodge, 77 A.3d 1263, 1274 (Pa. Super. 2013) (quotation marks and citations omitted). "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in best position to view

the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." Commonwealth v. Ventura, 975 A.2d 1128, 1134 (Pa. Super. 2009) (quoting Commonwealth v. Hanson, 856 A.2d 1254, 1260 (Pa. Super. 2004)).

At Appellant's sentencing hearing, his counsel suggested a sentence in the standard range, i.e., nine to sixteen months in prison for aggravated assault, six to fourteen months in prison for EWOC, and six months' probation for REAP. Notes of Testimony, Sentencing, 12/6/16, at 2. Counsel further suggested "lengthy probation with some supervision and no contact [with D.W. or any infant or child unable to talk]. I told him that for his own good, because any time a child is injured, if he's in the vicinity, it may fall on him." Id. The trial court then heard testimony from Appellant's grandmother, father, cousin, and Appellant himself.

Counsel for the Commonwealth next addressed the court, explaining that D.W. "is safe now because [Appellant] is removed from the situation." Id. at 11. "Because of [Appellant's] repeated history with infants and causing injuries to helpless infants in his care," the Commonwealth requested "a substantial sentence, and . . . a no contact order once [Appellant] is eventually released on parole or probation." Id.

The trial court then pronounced sentence, set forth in its entirety as follows:

> I ordered, read, and considered a presentence report. I have the guidelines. And, Mr. Williams, you obviously come from a loving

- 15 -

family. You said that you have one brother and then you told us you have three brothers and four sisters, and your grandmother said you had two brothers. But, nevertheless, the people who have spoken here today, obviously, are very caring. They love you. They think you're a good person.

I don't know that you are an evil person. What I do think is that you lost your temper, you got angry, and you let the whole situation get away from you. You caused serious injury to a two-month-old child. And the records indicate that you squeezed your daughter who was two months old causing fractured ribs, subconjunctival hemorrhages, right lateral side, and infraorbital petechia. The baby also had a fractured right fibula. Now, that is one thing.

The second thing that concerns me beyond belief is that you were charged with the prior aggravated assault on your five-month-old son. I believe he was found by you to be unresponsive. It showed that he had healing ribs, he had a skull fracture. I believe technically he died of pneumonia but that doctors found both old and new injuries. I don't think you should ever be around a child. I don't know, I'm just beyond words on your case.

So, on count one – and I will recognize [Appellant's counsel] is a kind man and can find good in anybody. That's not to be taken as a fault but as a compliment. At count one, as a felony, I order you to serve not less than five years nor more [] than ten years, to have no contact with your daughter when you are released with credit from January 7 of 2016.

At count three, I order you to serve three-and-a-half to seven years consecutive to the sentence I just imposed. This sentence is not a mandatory sentence. [Appellant] is not RRRI eligible.

You have the right to appeal the decision of this court within 30 days and the right to have a lawyer represent you. If you cannot afford a lawyer, I will appoint one to represent you free of charge.

Id. at 11-13 (emphasis added) (some capitalization omitted).[8]

_____

[8] A brief discussion then ensued in which Appellant's counsel advised the court that he had spoken with Appellant's family and would not be representing

As reflected in the sentencing transcript, the trial court "ordered, read, and considered a presentence report." Id. at 11. In Ventura, this Court noted:

> Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. Commonwealth v. Devers, 519 Pa. 88, 101–102, 546 A.2d 12, 18–19 (1988). In discussing Devers, our Court has explained:
>
> > In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors.
>
> Commonwealth v. Fowler, 893 A.2d 758, 766–[6]7 (Pa. Super. 2006) (citations omitted).

Ventura, 975 A.2d at 1135. In addition, we recognize the statutory mandate of 42 Pa.C.S.A. § 9781(c), which provides:

_____

Appellant on appeal. The court responded that the public defender's office would be ordered to represent him. Notes of Testimony, Sentencing, 12/6/17, at 13-14.

 (c) Determination on appeal.—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c).

Here, it appears the sentencing court "purported to sentence within the sentencing guidelines but applied the guidelines erroneously." Section 9781(c)(1). The trial court completed sentencing guideline forms for both aggravated assault and EWOC. The form for aggravated assault (under 18 Pa.C.S.A. § 2702(a)(8)) reflects Appellant's prior record score of four, a standard sentence range of nine to sixteen months, an aggravated sentence of 22 months,[9] and statutory limits of 60 to 120 months. Although the trial

_____

[9] The sentencing forms do not provide a range of sentences in the aggravated range. However, Appellant represents that consecutive sentences for both convictions in the aggravated range would total 42 to 84 months in prison, i.e., three and one half to seven years in prison. Appellant's Brief at 59. Again, the sentence imposed here totaled eight and a half to seventeen years, more than twice the term of a sentence in the aggravated range.

- 18 -

court imposed the statutory limits of 60 to 120 months, an "x" appears in the box indicating the sentence conforms to the standard range. The form for EWOC reflects Appellant's prior record score of four, a standard sentence range of six to fourteen months, an aggravated sentence of 20 months, and statutory limits of 42 to 84 months. Again, the trial court imposed the statutory limits. However, no boxed is marked indicating whether the sentence conforms to the standard, aggravated, or mitigated range.

Neither the trial court's statements at sentencing nor the sentencing guideline forms demonstrate any recognition on the part of the trial court that the sentences were above the aggravated range and constituted statutory maximum sentences. Moreover, in its Rule 1925(a) opinion, the trial court represents that the "sentence was appropriate and well below the statutory maximum." Trial Court Opinion, 12/4/17, at 21 (emphasis added). The Commonwealth maintains that Appellant's sentence is "not unreasonable, excessive, or unduly harsh." Commonwealth Brief at 69. However, even the Commonwealth acknowledges that "the state of the record is such that the Commonwealth does not know whether or not the trial court intended to impose statutory maximum terms of incarceration." Id. at 68-69.

The sentence also raises questions as to whether the sentence is "unreasonable" under Section 9781(c)(3) in light of factual inaccuracies articulated by the trial court at sentencing. For instance, in its statement at sentencing, the trial court refers to Appellant's infliction of a "serious injury"

- 19 -

on D.W., and refers to D.W.'s "fractured rib<u>s</u>" and "fractured fibula" as well as Appellant's deceased infant son's "skull fracture." Notes of Trial, Sentencing, 12/6/16, at 11-12. The trial court was mistaken in all fours instances. Appellant was convicted of aggravated assault under 18 Pa.C.S.A. § 2702(a)(8), which involves "injury," but was acquitted under 18 Pa.C.S.A. § 2702(a)(9), which involves a "serious injury." Further, the trial court represents that D.W. sustained fractured ribs (plural) when testimony confirmed a single fractured rib. Also, D.W. did not sustain a fractured fibula, nor did Appellant's deceased son suffer a skull fracture. Moreover, the trial court mentioned Appellant's previous conviction for "aggravated assault" with respect to Appellant's deceased son. The record reflects that Appellant was convicted of misdemeanor simple assault. Notes of Testimony, Sentencing, 12/6/16, at 10.

In its Rule 1925(a) opinion, the trial court "concedes counsel's point that [a Commonwealth expert] did indicate that [Appellant's deceased son] was not ultimately found to have a skull fracture, despite an area of concern on his x-rays, however, that was not the determinative factor in crafting this sentence and so it does not require resentencing." Trial Court Opinion, 12/4/17, at 20. The court continued, representing that "the record does reflect great deliberation and consideration in the formulation of the sentence. Under the circumstances, the sentence was appropriate and well below the statutory maximum." Id. at 21. As already explained, the sentence was not

"well below the statutory maximum," it was a statutory maximum sentence for each conviction, running consecutively.

Again, we are cognizant of the constraints on an appellate court when the trial court has had the benefit of a presentence report and states on the record that the court has reviewed and considered the report. However, we are nevertheless empowered—and in fact we are required under Section 9781(c)—to vacate a sentence and remand for resentencing if the trial court applied the guidelines erroneously or where a sentence outside the guidelines is unreasonable. We find that to be the case here.

Moreover, our reading of the sentencing transcript suggests that the trial court's focus here was on the seriousness of the offenses. In Commonwealth v. Coulverson, 34 A.3d 135 (Pa. Super. 2011), we found that focusing on the severity of the crime warranted vacating a sentence where the court only perfunctorily acknowledged the presentence report and did not discuss various factors, including possible rehabilitative potential. Id. at 150. Similarly, the trial court here perfunctorily acknowledged the presentence report. Notes of Testimony, Sentencing, 12/6/16, at 11. Despite the court's statement that the record "reflect[s] great deliberation and consideration in the formulation of [Appellant's] sentence[,]" Trial Court Opinion, 12/4/17, at 21, the trial court's pronouncement at sentencing is silent as to any considerations beyond the seriousness of the events involving D.W.

and Appellant's deceased child.[10]  Although 42 Pa.C.S.A. § 9721(b) requires that a sentence should reflect confinement consistent with certain factors, including rehabilitative needs of the defendant, the sentencing transcript does not reflect any consideration of rehabilitative needs.  Nor does the transcript reveal any stated rationale for deviating from the sentencing guidelines, as mandated by Section 9721(b).  As the statute provides, failure to comply with Section 9721(b) "shall be grounds for vacating the sentence . . . and resentencing the defendant."  42 Pa.C.S.A. § 9721(b).  Therefore, we vacate the sentence and remand for resentencing.

We find no error in the trial court's exclusion of the testimony of Appellant's expert, Dr. Koehler, or in its denial of Appellant's motion for a continuance.  Further, we find no error in admitting evidence of Appellant's prior conviction.  However, as discussed above, because the trial court abused its discretion in imposing its sentence, we vacate the judgment of sentence and remand for resentencing.

Judgment of sentence vacated.  Case remanded for resentencing. Jurisdiction relinquished.

---

[10] With respect to Appellant's prior conviction, we note that "factors already used in [Sentencing] Guideline computations, including inter alia, prior convictions, may not be used to justify an aggravated sentence." Commonwealth v. Johnson, 758 A.2d 1214, 1219 (Pa. Super. 2000), appeal denied, 775 A.2d 803 (citations omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2018